# CHARLESTON.

WEST VIRGINIA POWER AND TRANSMISSION COMPANY *v.*
MARY E. VOIGHT *et al.*

Submitted September 19, 1922. Decided September 26, 1922.

1. VENDOR AND PURCHASER—*Agreement by Owner of Land Held Option to Purchase.*

    A contract by which an owner of land, for and in consideration of a nominal sum of money paid and a substantial amount to be paid, agrees to grant, bargain and sell the land, subject to a limitation or proviso saying time is of the essence of the agreement and failure on the part of the other party, to elect in writing, within one year from its date, to purchase under it, shall render it null and void and of no effect; but that, in the event of such election, it shall be the duty of the owner to deliver to the purchaser a deed for the land within thirty days thereafter, creates a mere option to purchase the land, convertible into an executory contract of sale thereof, by acceptance in writing.  (p. 582).

2. SAME—*Time as of Essence if Large Partial Payments Made on Land Contract Under Written Modifications Not Expressly Stipulating for Essentiality of Time.*

    Even though, after such acceptance, time may be an essential element of the contract, by reason of such provision, it will cease to be so, if large partial payments of the purchase money are subsequently accepted under written modifications of the contract, which do not clearly and expressly stipulate for essentiality of time. It cannot be inferred from uncertain and indefinite expressions or provisions.  (p. 585.)

3. SPECIFIC PERFORMANCE—*Not Precluded by a Reasonable Delay in Paying Residue Where Time Not of Essence.*

    If, under an executory contract of sale of land, in which time has not been made an essential element, or from which

such element originally embodied in it has been eliminated, substantial payments have been made, mere delay in payment of the residue for a reasonable period of time does not preclude specific performance at the instance of the vendee, under the principle of laches. Nor will such delay together with circumstances working hardship upon the vendor, occasioned by his own conduct induced by misapprehension of his rights under the contract, preclude such relief, either on the ground of laches or discretion in the court to refuse specific performance, under conditions warranting exercise thereof. (p. 588).

4. SAME—*Contract for Sale of Land Conditioned Upon Construction of Road Before Delivery of Deed Mutual' in Obligation and Remedy.*

In a contract of sale of a portion of a tract of land, containing a provision requiring the vendee to construct a road for the benefit of the residue of the tract or to execute a bond with security, conditioned for construction thereof, before delivery of the deed, there is mutuality of both obligation and remedy. (p. 589).

Appeal from Circuit Court, Monongalia County.

Suit by the West Virginia Power & Transmission Company against Mary E. Voight and others. From a degree for plaintiff, defendants appeal.

*Modified and affirmed.*

*Glasscock & Glasscock* and *Alter, Wright & Barron,* for appellants.

*Donley & Hatfield, McCahill & McCahill* and *P. J. Crogan,* for appellee.

POFFENBARGER, PRESIDENT:

The purpose of this appeal is review of a decree requiring specific performance of a contract of sale of real estate. Several defenses were interposed, among which was an appeal to the court to refuse specific performance, in view of circumstances disclosed which it is argued, render it inequitable.

In its original form, the contract created a mere option. It was dated December 24, 1912, accepted and converted

into a contract in 1914, partly performed by payments on the purchase price, made in 1913, and 1914, and, it is charged, ignored from 1916 until December, 1919, when performance thereof was demanded by the vendee or his remote assignee.   Compliance with this demand having been refused, this suit was brought in March, 1920.

By the original contract, time of performance on the part of the vendee may have been made essential; but, if it was not, the delay on the part of the vendee, the circumstances attending it and the changes in the situation of the parties occasioned by the delay and induced by the conduct of the vendee are relied upon as calling upon the court for the exercise of its discretionary power to refuse a decree for specific performance.

In point of form, the agreement of December 24, 1912, was a contract of sale of 9.636 acres of land, in consideration of $4,000.00 to be paid upon the delivery of a deed for the land, and performance of some conditions precedent, except in so far as it was qualified by a provision saying it should be null and void and of no effect, unless the party of the second part, within one year from its date, should give notice in writing of his election to purchase under it.   There was a further provision for extension of the life of the agreement for six months, by payment of $200.00 within one year from its date.   On January 3, 1913, $1,000.00 was paid on account of the purchase money, under an agreement introducing some new conditions.   On or about Dec. 14, 1913, $200.00 was paid for extension of the contract, with the understanding that it should be credited on the purchase money.   In July, 1914, after expiration of the six-months extension, another payment of $1,084.00 was accepted, it being for $1,000.00 on the purchase money and $84.00 interest.   By the agreement attending this payment, evidenced by letters, it was provided that the vendee should have a "new option," until December 24, 1915, upon the terms of the original option, except as to date of expiration, and some new conditions were specified in the letters.   By correspondence between the parties in 1914, it was admitted that

the option had been converted into a contract of sale. In consideration of the payment on June 28, 1915, of interest on the balance of purchase money remaining due and unpaid, and interest for one month, on the last $1,000.00 paid, amounting in all to $113.00, the contract, as modified in July, 1914, was extended for one year from June 24, 1915. Nothing further occurred between the parties, until December, 1919, when a demand for a deed was made. In the meantime, important changes occurred in the situation of the parties.

The vendee, Harold A. Dunn of Pittsburgh, contracted for the property for the purposes of the West Virginia Development Company, which seems to have been succeeded by the Hydro-Electric Company of West Virginia. It was intended as part of the land to be submerged by a gigantic reservoir in the Cheat River, to be used in the generation of electricity for heat, light and power. Between 1912 and 1914, work on the dam in said river for the impounding of its waters was commenced and prosecuted to completion to the extent of about forty per cent., by the American Water Works and Guaranty Company, as contractor. Early in the latter year, the work was discontinued on account of failure of the contractor, financial embarrassment of the owner and other adverse conditions. A foreclosure proceeding against the then owners of the property was commenced about July, 1916, which resulted in a sale and conveyance thereof by a special commissioner, under a decree of sale, to the plaintiff in this cause, the West Virginia Power and Transmission Company. This conveyance was made by a deed dated in September, 1917. Deeming the contract here involved to have been a mere option expiring June 24, 1916, the defendants, without notice to the alleged vendee or any of his successors in title, or any person representing them or any of them, and without inquiry as to their intentions respecting the property, conveyed a small part of it to one Joseph H. McDermott. At some time in the year 1919, still under the impression that lapse of time had extinguished the contract, they entered into negotiations

with one Samuel E. Diescher of Pittsburgh, for the sale
of the residue of the property, together with additional
land with which it had been embraced in a larger improved
tract known as the Mont Chateau property, for a large
amount of money, $40,000.00 or $50,000.00. Having ob-
tained information concerning these negotiations, Dunn, in
December, 1919, made an examination of the title records
of Monongalia County, when he discovered the deed to Mc-
Dermott, but no contract with Diescher nor any conveyance
to him. Thereupon, he caused his contract to be admitted
to record, and demanded performance thereof on the part
of the vendors, offering to pay the balance of the purchase
money.

Although the contract was denominated an option as late
as July 21, 1914, we are unable to concur in the view that
it maintained that status after August, 1914. In a letter
dated, August 20, 1914, the representative of the vendors
admitted an election on the part of Dunn and his associates,
to exercise the option and to purchase the property, and, in
consequence thereof, the existence of an agreement between
his clients and the Hydro-Electric Company, ''binding upon
both parties to complete the transaction.'' Whether essen-
tiality of time of performance may have been then intro-
duced or continued involves a rather broad inquiry. By
the original contract, Dunn agreed, in the event of acceptance
of the option, to construct a road above the high water line,
for use in lieu of the then existing road. One of the modi-
fications effected by the correspondence in July, 1914, was
an alternative provision for execution of a bond, before de-
livery of the deed, in the penalty of $4,000.00, with a surety
company, as surety, and conditioned for construction of the
road before admission of water into the reservoir. Another
was that, upon demand, the vendee would pay one-half of
the expense of drilling a water well, provided such half
should not exceed $100.00. Another related to extension of
time and payment of purchase money and interest thereon.
Upon payment of $1,000.00 on the purchase money and
$84.00 interest, the time was to be extended until June 24,

1915, and, upon payment of the remaining $1,800.00, with $113.00 interest, at any time prior to June 24, 1915, and compliance with the other conditions, on the part of the vendee, a deed was to be executed and delivered. The payment of $1,084.00 having been made, the letter of August 20, 1914, referred to the remaining obligations in these terms: "We will expect you to make the payment and supply the road or bonded agreement to construct the same, as provided in my letter, on or before June 24, 1915, at which time my client will, in any event, tender the Hydro-Electric Company a deed." In his reply to the letter of August 20, 1914, Dunn seems to have admitted an impression that he had been technically in default, in respect of acceptance, none having been formally made in writing, as required by the original agreement. The letter of August 20th refers to that of July 21st, which speaks of the granting of a "new option" and the "original option," and avows purpose to tender a deed "in any event," on June 24, 1915. But, in the solution of this question, it is necessary to consider some additional phases of the papers and transactions. In the original paper, there was no manifestation of intent to forfeit any money paid except the recited consideration of $10.00. If the option had been allowed to expire that would have measured the loss in actual money. It is rather uncertain whether the stipulation for essence of time applies after acceptance of the option. It may be limited by what immediately follows it, although its terms take in the entire agreement. After actual purchase money was paid, there was no express stipulation clearly making time essential under the new conditions. Originally, no partial payments were contemplated. All of the purchase money was to be paid at once, on delivery of the deed. The forfeiture clause must be interpreted with reference to the time at which it was entered into and the conditions and purposes then obtaining. Only $10.00 would have been lost by total failure to pay after acceptance. Moreover, there is no clause stipulating for a right of forfeiture or annullment after acceptance. The provision relied upon can be

extended so as to include that, only by implication and the implication would not be a necessary one. In none of the letters following execution of the original contract, is there any clear reference to such right or stipulation therefor. It could arise only by inference from the grant of a new option and stipulation for observance of the original option in so far as it was not modified. As neither the new option nor the original one contained a clear and express stipulation for time as an essential element and loss of right by default in payment of the residue, it could come into the contract, only by unnecessary implication. The notification that, in any event, a deed would be tendered, June 24, 1915, constitutes no more than a basis for argument of intent or purpose to claim abrogation of the contract, for non-payment. It may have meant no more than notice of intent not to extend the time of payment any further, and to tender the deed and put the purchaser in default to such an extent and in such manner as to give ground for an action to recover the money or a suit for specific performance. ''To render time essential, it must clearly appear that such was the intention of the parties.'' Waterman Spec. Per., sec. 462; *Abbott* v. *L'Hommedieu,* 10 W. Va. 677, 713; *Cosby* v. *Honaker,* 57 W. Va. 512.

The distinction between contracts partly performed by payment or otherwise and contracts under which nothing has been done has important weight in the determination of inquiries of this kind. If nothing has been paid and possession neither parted with nor acquired, nothing is involved except the mere value of the bargain, the loss of which may not be materially detrimental. If nothing had been paid under this contract and refusal of specific performance would not extinguish any substantial vested right, the stipulation as to time might well be applied to the contract after acceptance, for then it would work as the parties may have intended. But, after payments were made and the contract modified by acceptance of part of the purchase money under supplemental agreements, contrary to its original terms and intent, the situation of the parties was very materially and

radically changed, wherefore the uncertain stipulation as to time found in the original paper, cannot be deemed to have been intended to apply to the altered situation. It must be remembered that the original contract was altered by both conduct and modifying stipulations. These alterations in situation and terms must be considered and allowed effect in the interpretation of the time provision. Award to them of their due weight and significance necessarily denies to it the force and effect claimed for it. The distinction here noted is well recognized and sustained by authority. *Keffer* v. *Grayson,* 76 Va. 517; *Wells* v. *Smith,* 31 Am. Dec. 274, note; 2 Lead. Cas. Eq. 1134. Our conclusion upon this inquiry is that time was not of the essence of the contract at the dates of the defaults on the part of the vendee, relied upon as precluding right to compel specific performance by the vendors.

As the delay complained of involved nothing more than the withholding of money that should have been paid and which, according to the testimony of Dunn, would have been paid, if demanded, the doctrine of laches is inapplicable. Interest on the money, which the decree allows, will fully compensate for that. In this, there is neither an element of estopel nor evidence of abandonment of the right conferred by the contract. Delay does not preclude right unless it occasions material detriment.

Nor do the circumstances disclosed make out a case of abuse of discretion on the part of the trial court, in decreeing specific performance. Such hardship and detriment as may result to the vendors, by reason of the conveyance of part of the property, on a delay of about seven months in payment, after the last extension, is of their own creation. They made that conveyance under a misapprehension as to their rights, not upon altered conditions wrought by the vendee. They explicitly say in their testimony they made it because they thought the contract had expired. In this connection, there is a possible intimation of an impression on their part that it had been abandoned by the vendee; but they made no inquiry as to a matter they could have

easily ascertained. In making the conveyance without such inquiry, they clearly acted at their peril. No relief is sought against McDermott. The bill seeks and the decree accords such right and title as remain in the vendors.

Moreover, upon our interpretation of the contract as modified, the rights of the parties were mutual and dependent at the time of that conveyance. It was as much the duty of the vendors, to tender a deed, as it was the duty of the vendee, to pay the balance of the purchase money. No tender thereof was ever made.

There is no lack of mutuality in either the contract or remedy. Though the court might not have been able to compel the construction of the road, it could have decreed damages by way of compensation. The road was a mere incident of the main contract, and the contract as modified gave right to substitute a bond for performance of the work.

The decree, however, is uncertain in one respect and departs from the contract in another. It does not expressly require the bond conditioned for the building of the road to be filed before delivery of the deed, and it requires a bond with security to be approved by the clerk of the court, instead of a bond with a surety company as surety, as prescribed by the contract. The paragraph of the decree dealing with the subject will be modified so as to require a bond with such condition and with a surety company as surety therein, to be filed in the papers of the cause by the plaintiff, before delivery of the deed authorized by the decree, and, as so modified, the decree will be affirmed with costs to the appellee as the party substantially prevailing. As the corrections made in the decree relate to matters of minor importance, it is presumed they would have been made in the court below, upon request.

*Modified and affirmed.*