# CHARLESTON.

CHARLES E. BLUE v. CAMPBELL W. BLUE *et als.*

Submitted November 21, 1922.   Decided December 12, 1922.

1. REFORMATION OF INSTRUMENTS—*Equity will not Reform Deed for Alleged Mutual Mistake Unless Shown by Clear and Unequivocal Evidence.*

   A court of equity will not reform a deed because of alleged mutual mistake therein, unless it is shown by clear, convincing and unequivocal evidence that a mutual mistake was made. (p. 580).

2. EQUITY—*Cannot Grant Under General Prayer Relief Inconsistent with Special Prayer.*

   Where a bill contemplates, and the prayer asks for specific relief, in this case reformation of a deed, the court cannot grant relief inconsistent therewith, under the clause in the prayer for general relief. (p. 582).

3. APPEAL AND ERROR—*Where Specific Relief Denied, Appellate Court May Remand with Leave to Amend Pleadings that Equities May be Judicially Determined.*

   But where such specific relief is properly denied upon the final hearing, and the case has been so developed as to show there are equities between the parties arising out of a joint adventure which should be speedily determined and without the delays incident upon a new suit for that purpose, the appellate court may remand the cause, with leave to either of the parties to amend or supplement his pleadings, if he so desires, as to form a proper basis on which the equities may be judicially determined. The situation of the parties and the exigencies of this cause warrant such procedure. (p. 582).

Appeal from Circuit Court, Jefferson County.

Suit by Charles E. Blue against Campbell W. Blue and others. From the decree rendered, the plaintiff appeals.

*Modified and affirmed.*

*George M. Beltzhoover, Jr.,* and *Walker, Kilmer & Byrer,* for appellant.

*Brown & Brown,* for appellees.

LIVELY, JUDGE:

This suit was instituted solely for the reformation of a

deed dated May 30, 1910, executed by W. O. Norris and others to Charles E. Blue, thé plaintiff, and Campbell W. Blue, the principal defendant, conveying to them a tract of about 190 acres of land in Jefferson county, on the ground that there was a mutual mistake in the preparation of the deed. The plaintiff in substance contends that the fee simple title was intended to be and should have been conveyed to him. Defendant says that there was a mistake in the making of the deed, but contends that the mistake is only that it conveys to him a one-half undivided interest, whereas he was only entitled to and should have a one-third undivided interest, by virtue of a contract existing between himself and the plaintiff.

Plaintiff and defendant are cousins, and married sisters; and prior to 1910 resided in the city of Wheeling where the plaintiff owned and operated a mould and foundry shop, in which defendant was employed at a monthly wage of $125.00. Defendant, prior to his employment in Wheeling in the mould and foundry shop, had had considerable experience in raising and marketing peaches and apples in the eastern part of the state. Both parties appear to have been desirous of embarking in the orchard business, and a tentative verbal agreement seems to have been entered into by them by which the plaintiff, who had financial means, should buy and pay for a suitable tract of orchard land if one could be found, and defendant, who had experience and skill in the orchard business, should take charge of, develop and operate the farm, putting in his time, skill and experience in lieu of his share of the necessary capital, he to have one-third interest therein and the plaintiff a two-thirds interest therein. Defendant, by mutual agreement, about the year 1908, made a trip to some of the northwestern states, the apple growing sections, for the purpose of finding a suitable farm for the purpose indicated, but found that the prices and conditions were not suitable, and returned to Wheeling where he continued his work in the mould and foundry shop. Later, in 1910, plaintiff learned, through Col. McDonald, a personal friend who resided in Jefferson county, that the farm now the subject of

BLUE v. BLUE.

litigation, was suitable for that purpose and could be purchased. The two cousins, about the 4th of May, 1910, in company with Col. McDonald and his son, went and personally inspected the farm, and concluded to buy. Plaintiff left Jefferson county the night of the day of the examination of the property, and placed the details of the purchase in the hands of his agent, Col. McDonald. The defendant, after visiting some other farms which were for sale, left the county on the following day. An executory contract was entered into by Norris and others, the owners, with plaintiff, setting out the terms of the prospective purchase. The farm was to be purchased for $16,320.00, $8,320.00 of which was to be paid by the first of June following, and the remainder in payments secured by a vendor's lien. On the 30th of the same month the deed in question was executed, Col. McDonald, who is now dead, representing the plaintiff and paying the purchase price and delivering the purchase money notes for the deferred payments, which notes remain unpaid, and the deed was duly admitted to record in the county clerk's office, remaining there until in 1920 when it was delivered to the plaintiff. Neither plaintiff nor defendant was present at the time the deed was executed and delivered. The vendors testified that the deed was made to the plaintiff and defendant jointly at the direction of Col. McDonald, the agent of the plaintiff. Marshall McDonald, the son of Col. McDonald, who accompanied his father and the plaintiff and defendant when the property was visited and agreed to be purchased, testified that he understood from both plaintiff and defendant that they were jointly interested in the purchase. His evidence on that point is: "The understanding I had at that time, and have since held, was that they were purchasing the farm as partners—C. E. Blue was putting up the money to buy the farm, and C. W. Blue was putting in his services and expert knowledge of fruit growing into the partnership." He also says that his father gave to the draftsman of the deed instructions to prepare the deed as it was afterwards drawn. Defendant says that prior to the visit to Jefferson county to inspect the farm a verbal agree-

ment was made between himself and plaintiff concerning their joint interest in the proposed purchase, which afterwards (and he is not sure whether it was before the execution of the deed or afterwards) was reduced to writing by the plaintiff, one copy of which plaintiff signed and delivered to defendant, and the other copy of which defendant signed and delivered to plaintiff, the substance of which was that plaintiff was to furnish the money for the purchase and operation of the farm, and have a third interest therein, and he, defendant, was to take charge of the land, plant and develop the orchard and have a one-third interest therein, to be paid for out of the profits, if any profits were made therefrom, and if none were made he was to owe nothing to the plaintiff. Plaintiff denies that any such contract was ever reduced to writing. The copy of the alleged contract which was in possession of defendant was burned up in a fire which destroyed his dwelling house on the farm, in the year 1913. William V. Hogue, a brother-in-law to plaintiff and defendant, and who at that time worked for plaintiff, testified that he saw the contract which was in a small safe at the office of the Wheeling Mould and Foundry Company, of which he had charge at the time, and that the contract was afterwards transferred to plaintiff's safety deposit box in the National Exchange Bank in Wheeling. His recollection of the contents of the contract is as follows: "Mr. C. E. Blue and C. W. Blue were to buy Orchard Crest Farm jointly. Mr. C. E. Blue was to put up the necessary purchase price and money to operate same until they had planted the orchard and the profits from same were such that C. W. Blue could buy his interest in same. C. E. Blue was also to pay C. W. Blue a nominal salary from the time that they bought until the orchard paid enough to pay off his indebtedness." This copy of the contract, if it existed, was never produced.

In the early part of 1911 defendant moved upon the farm, took charge of it, and in due course of time planted an orchard of about 80 acres, consisting of about 8,000 fruit trees, which at the time of the institution of the litigation had begun to bear and bring in considerable profits. He testified

that the sale from the farm of the orchard products amounted to $6,790.27; sale of live stock and wool, $29,698.37; farm products, $12,690.70; and miscellaneous receipts from the farm, $1,539.19; that he had kept a strict account of all of the expenditures and had deposited all the receipts in banks designated by plaintiff and had paid practically all of the expenses of the farm by checks drawn thereon. Plaintiff seemed to take a great interest in the development of the property, made frequent visits thereto and furnished considerable money for its operation. He testified that he had furnished, including purchase money and interest on the advancements, something like $50,000.00 for its operation and development. Defendant testified that the amount furnished by plaintiff for that purpose would not exceed $20,000.00, including the cash purchase money and interest. Defendant was to receive a salary of $75.00 per month, and from 1911 until 1916 was paid $50.00 a month, only, the other $25.00 being retained by plaintiff as part payment on defendant's interest in the farm. A great many letters passed between the parties concerning the joint venture, which are in evidence, and which are not of particular value to the issue, except one written by plaintiff to defendant, dated at Wheeling, West Virginia, on January 19, 1916, the opening paragraph of which is the pertinent part and which is as follows: "Dear Campbell. If I ever wrote you a letter on the subject of our partnership arrangement at Kearneysville, I expect you lost it in the fire. I may have a copy of it somewhere, but just at present it is easier to write a new letter than it is to find an old one. My understanding was that you were to have a third interest in the farm to be paid for out of the profits, you not owing me anything provided there were never any profits, which so far there hasn't been." The substance of plaintiff's understanding of the arrangement with defendant, which he says was not in writing, is: "There was a plain and simple arrangement I made with Campbell Blue, partly for my own business and partly to help him along. I said 'Go and manage the farm and I will pay you a salary as manager,' and as a further inducement to try to get him in-

terested in the economical management of the farm, I said, 'I will sell you a one-third interest in this farm, and you are to pay me for the one-third interest out of the proceeds derived from the operation of the farm.' It was the same method of business I have been pursuing in my manufacturing business for years. * * *´* This is simply the profit sharing scheme. The profit was to be applied to the payment for the one-third interest in that farm. I did not see that this should need anything in writing.'' In 1916 a profit of $1200.00 was realized from the farm, possibly because of war prices, which was paid to plaintiff and which he acknowledges he received, and which was to be applied as a payment on the interest of defendant. In 1919 or 1920, for some reason which is not clear, an estrangement arose between the parties, and plaintiff seems to have become dissatisfied with the management of the farm, and with the fact that he was getting no returns therefrom. He interfered in various ways with the purchases and sales made and with the fund which was in bank. The farm had become valuable, some of the witnesses fixing its value as high as $100,000.00. It became evident that the business could not be successfully conducted, both parties becoming dissatisfied and not acting together in complete harmony, and overtures were made for an adjustment. Defendant offered to purchase the right, title and interest of plaintiff for the sum of $70,000.00, with a cash payment of $25,000.00, the remainder in installments, and plaintiff drew up an agreement to that effect, but it was never consummated, because, as plaintiff says, he ascertained that defendant proposed to raise the money by mortgaging the farm; on the other hand, a tentative offer was made by plaintiff to defendant for his interest, at $10,000.00, which, of course, was not consummated. A short time before the institution of the suit, plaintiff discovered, as he claims, that the deed was so drawn that defendant owned the title to a one-half interest therein, and without delay he requested defendant to convey to him the fee simple title. Some discussion and overtures with that view were had between the parties, at the office of

Mr. Norris, in Charles Town, which accentuated the different claims between the parties, and after which this suit was promptly instituted. Defendant never claimed more than a one-third undivided interest in the land, and before and after the suit proffered to make a correction in the deed so as to leave him only a one-third interest therein. He claims that he had nothing to do with the drafting of the deed, and says that he never discovered that it was so drawn until about the year 1916, and supposed that plaintiff, for reasons of his own, had it prepared in that way. ·

The sole question presented is whether this evidence justified a reformation of the deed. The suit is for that purpose alone. The decree complained of reformed the deed so as to give plaintiff a two-thirds undivided interest, and the other one-third undivided interest to defendant, and awarded costs against plaintiff.

The principles of law applicable to reformation of a deed because of mistake are well settled and defined in our decisions. Where the mistake is clearly made out by proof, equity will reform the deed so as to make it exactly conform to the intent of the parties. But if the proof be doubtful, and the mistake is not made plain beyond reasonable controversy, the deed will not be reformed. A deed is a solemn instrument executed with formality and imports full and complete exposure of the intent of the parties, requiring convincing and absolute proof of mistake before it can be reformed or set aside. The supreme court of Wisconsin has gone so far as to hold that it would be an extreme case where it would reform a written instrument upon the uncorroborated testimony of a party thereto, even if such testimony was uncontradicted. *Harter* v. *Chrisloph*, 32 Wis. 245. The books are full of cases which illustrate the extreme caution which courts exercise in such matters. Relief will be denied whenever the evidence is loose, equivocal or contradictory, or is open to doubt or opposing presumptions. Story Eq. Jur. Vol. 1 sec. 152. See *Jarrell* v. *Jarrell*, 27 W. Va. 743; *Robinson* v. *Braiden*, 44 W. Va. 183; *Knowlton* v. *Campbell*, 48 W. Va. 294; *Hertzog* v. *Riley*, 71 W. Va. 651; *Stevens* v.

*Johnson,* 72 W. Va. 434; *Melott* v. *West,* 76 W. Va. 739; *Watson* v. *Monroe Coal & Mining Co.,* 85 W. Va. 645; *Stickley* v. *Thorn,* 87 W. Va. 673. It is clear, beyond doubt, that there was a mistake in this deed to the extent of giving defendant, Campbell W. Blue, a one-half undivided interest in the farm. But it is not free from doubt that he should be deprived of all interest therein, and that the deed should be reformed to that extent. On the other hand, the evidence that he was to have a one-third interest preponderates in his favor. He has paid to plaintiff $2700.00 on his interest in the land. If he had no interest therein, it is hard to understand for what reason this money was paid and accepted. The learned judge in his oral decision on this point well said: "I will say that the mere fact that the deed was made conveying this farm to both of them is probably hard to understand on any other theory than that it was understood by them at the time, that it was to be conveyed in that way. It was made that way at the instance of Major McDonald, who was acting for Charles E. Blue; Charles E. Blue having left the night before and was not present when the deed was made. Mr. Norris testified that Major McDonald told him to make the deed that way."

It is apparent from what we have said that the first assignment of error, namely, that the deed should have been reformed so as to give a fee simple title in the land to plaintiff is not well taken, and the decree will not be disturbed in that particular. Nor do we think the court erred in not decreeing a lien in favor of plaintiff on the one-third undivided interest decreed to Campbell W. Blue to secure the payment of the purchase money therefor. He was to have a one-third interest in the farm, and to pay for it out of the profits, if any were made, and if none were realized, he was to owe nothing. The contracting parties entered into a joint adventure in which one was to furnish money to promote the enterprise, and the other to contribute services, which by experience and knowledge of the business, he was peculiarly fitted to perform. There seems to have been no provision or understanding that either party should have a lien or

charge upon the interest of the other to secure faithful performance, and courts of equity generally decline to make contracts between parties, or add provisions thereto unless clearly implied. Moreover, for what sum should there be a lien, and for how long should it exist before right of enforcement accrued? There was no settlement of the mutual accounts, no ascertainment of profits or losses. Indeed, there could not have been under the pleadings. The bill prays for a reformation of the deed only, and the suit was for that specific purpose. Plaintiff declined to enter into a detailed statement and proof of his advancements to the enterprise, considering these advancements as his private business and having no proper place in the litigation.

Tested by the agreement as substantially proved, both by the writing, (the letter of January 19, 1916), and the conduct of the parties, the relationship established partakes of the nature of a joint adventure, under which the rights, obligations and duties of the parties are somewhat similar to those existing between partners. 15 R. C. L. 500. *Alderton* v. *Williams,* (Mich.), 102 N. W. 753; 23 Cyc. 452.

It would be premature to discuss the mutual rights, obligations and remedies of the parties under the terms of this joint enterprise; the facts are not fully developed, and the pleadings do not warrant it. It is urged by appellant's counsel that an accounting should have been ordered under the prayer for general relief. Where a bill contemplates and the prayer asks for specific relief, as in this case reformation of a deed, the court under the prayer for general relief cannot award relief inconsistent with the objects and purposes of the bill. *Pickens* v. *Knisely,* 29 W. Va. 1; Bart Chy. Pr. 265; *Vance Shoe Co.* v. *Haught,* 41 W. Va. 275; *Brown* v. *Wylie,* 2 W. Va. 502; *Hurt* v. *Jones,* 75 Va. 341. We do not think the court erred in not providing for an accounting between the parties. Neither party asked, and the pleadings did not justify, a reference for that purpose.

It is apparent that both parties are anxious for and should have a speedy settlement of this litigation. The property has increased in value many times over the purchase price, and

the orchard is beginning to bear, and bring in a substantial profit. The fruition of the hopes of the joint adventurers seems to be near at hand, and the unfortunate estrangement and bickerings of the parties, if not speedily terminated, will cause serious financial loss, and perhaps embarrassment, to both of them. The court has settled the issue presented by the pleadings. It could go no further. It is evident that other suits will follow unless some amicable working agreement is voluntarily effected by the parties. Such suits will entail costs and delays. The parties are now in court and a part of the evidence .which would be necessary in a new suit has already been taken, and under the peculiar situation and facts we think it would be equitable to permit either of the parties, if they so desire, to amend their pleadings so as to afford a basis for judicial settlement of their respective rights as they may appear.

Therefore, we have concluded to modify the decree in that respect only, so as to give to either party desiring to do so leave to amend his bill or answer for the purpose indicated; otherwise, the bill will be dismissed. Costs of this appeal are awarded the appellee, Campbell W. Blue, as the party substantially prevailing.

*Modified and affirmed.*