CHARLES V. POWNALL

*v.*

AUGUSTA M. CEARFOSS, *etc.*

(No. 9788)

Submitted September 11, 1946. Decided December 21, 1946.

*Martin & Seibert,* for appellant.

*J. O. Henson,* for appellee.

HAYMOND, JUDGE:

This appeal was granted upon the petition of the defendant, Augusta M. Cearfoss, Surviving Executrix, and the sole residuary legatee under the will of Jesse O. Snyder, deceased, who seeks reversal in this Court of the judgment of the Circuit Court of Berkeley County, entered June 26, 1945. The decree of which the defendant complains granted the plaintiff, Charles V. Pownall, the relief prayed for in his bill of complaint and held that the contract in suit constituted a joint adventure, which the plaintiff was entitled to have carried out, and that he was entitled to have a settlement of the accounts between the parties to this suit and a sale of the remaining unsold assets of the joint adventure.

The question of controlling importance here is whether a written contract, entered into December 11, 1934, between Jesse O. Snyder, now deceased, and the plaintiff, Charles V. Pownall, created a joint adventure or the relationship of principal and agent between the parties to that agreement. The plaintiff contends that the contract established a joint adventure and set up a trust between the parties which is cognizable in a court of equity. The defendant insists that the contract created the relationship of principal and agent, and that the plaintiff has an adequate remedy at law. Other issues, which are hereafter discussed, are also presented.

This suit was instituted in August, 1944. An order of attachment was issued against the estate of the defendant sufficient to pay the sum of $5,000.00 and the costs of the suit, which order was returnable October 17, 1944, and under it a levy was made upon the real estate, located in Berkeley County, West Virginia, covered by the contract involved in this litigation. The original tract contained approximately fifty-five acres, the title to which, according to the terms of the order of attachment, was held by the defendant as executrix of J. O. Snyder, deceased. Upon motion of the defendant the order of attachment was quashed by the court on December 9,

1944. No question concerning the action of the court in this respect arises on this appeal.

The bill of complaint charges, in effect, that by virtue of a written agreement between the plaintiff and Jesse O. Snyder, now deceased, dated December 11, 1934, a joint adventure was created between the parties to the agreement covering a tract of approximately fifty-five acres of land in Berkeley County, West Virginia, owned by Snyder; that the plaintiff had performed certain obligations imposed upon him by the agreement; that after the death of Snyder, because of the refusal of the defendant, as executrix of the will of Snyder, and in her own right as sole residuary legatee, to execute a deed for some of the unsold portion of the real estate which plaintiff has had an opportunity to sell, he has been unable to consummate proposed sales; and that the defendant, after the death of Snyder, has repudiated and refused to execute his obligations under the agreement. The prayer of the bill of complaint is, in part, that the contract be construed and enforced; that the remaining real estate of the joint adventure be sold and the proceeds divided equally between the plaintiff and the defendant; that there be an accounting between the parties to this suit; and that the plaintiff be granted general relief.

The defendant, a nonresident of this State, who lives in Hagerstown, Maryland, entered a general appearance in the suit and filed a written demurrer to the bill of complaint. The demurrer, which assigns numerous grounds, was overruled. The defendant then filed her answer, in which she denies all the material allegations of the bill of complaint except the execution of the contract, the payment by Snyder of the bills presented to him by the plaintiff, the sale of the lots set forth in the answer, the death of Snyder in 1941, the execution of his will, its recordation in Berkeley County, her qualification under the will, and the effort of the plaintiff, in 1944, to induce her to execute a deed after she had told him, in 1941, that she would not revive the contract. In the answer she also alleges that the contract was

abandoned by the plaintiff in 1938 and that he made no effort, after that time, to sell the lots which had been laid out upon the property.

The cause was heard upon the bill of complaint, the answer of the defendant, the general replication of the plaintiff, and the evidence of the parties and various witnesses produced to the court; and on June 26, 1945, the court entered the adverse decree, reversal of which the defendant seeks in this Court.

The agreement upon which this suit is grounded, filed as an exhibit with the bill of complaint, provides, in substance, that Snyder and Pownall should proceed to develop a tract of real estate of about fifty five acres, referred to as the Patterson Farm Property, situated approximately one fourth of a mile north of Martinsburg, in Berkeley County, West Virginia, about fifty three acres of which are located on the west side, and the remaining portion of about two acres on the east side, of U. S. Route No. 11, which land Snyder had purchased on November 14, 1934, and for which he paid $6,200.00; that Pownall should have complete charge of, and proceed with, the development of the property with reasonable speed, which development specifically included surveying, plotting, laying of streets and sidewalks, advertising and selling lots, by auction or otherwise, receiving and collecting cash, notes and liens, receiving, depositing and disbursing the proceeds of sales, and repairing all buildings on the property to the extent deemed advisable by him; that Snyder should bear and pay all the expenses of the development, as the bills for such expenses, approved by Pownall, were presented to Snyder for payment, which expenses were to be payable from the proceeds of the sales of the property when they became available; that all notes and liens should be taken in the name of Snyder, who should make proper deeds to the purchasers as they became entitled to such deeds; that all expenses should be satisfied, and $6,200.00, without interest, paid to Snyder before any return of profits should be received by either Snyder or Pownall; that

Pownall should receive no compensation for his services until after the payment of the expenses and $6,200.00 to Snyder; that Snyder and Pownall should share equally in all profit then remaining; and that Snyder and Pownall should have a statement and a settlement of accounts on July 1 and January 1 of each and every year, beginning July 1, 1935, until all operations under the contract should be completed.

This agreement, signed by both parties, was acknowledged by them on December 11, 1934, in Washington County, Maryland, before Augusta M. Cearfoss, the defendant, who had been secretary to Snyder for twenty-two years before his death, and who, according to her testimony, was familiar with the agreement and many of the transactions of the parties which arose from it. She also had in her possession, prior to and at the time of the trial, the records which had been, in large measure, kept by her in his office and which related to the transactions covered by the agreement.

At the time the foregoing agreement was made, Snyder was a successful and well to do lawyer of Hagerstown, Maryland, and Pownall had been actively engaged in the real estate business for many years at Martinsburg, West Virginia.

Snyder became ill in 1939, having suffered a slight paralytic stroke at that time, but he continued to transact his business affairs until August or September, 1940. His will was written March 18, 1940. From September, 1940, until his death, February 10, 1941, he was unable to transact any business. By his will, after disposing of designated farm lands and various sums of money by specific devises and bequests to other named beneficiaries, he gave, bequeathed and devised, absolutely, to Augusta M. Cearfoss, the defendant, who is referred to as his secretary, all the rest and residue of his estate, real, personal or mixed, wherever situated. He also appointed his brother, William Firey Snyder, executor, and Augusta M. Cearfoss, executrix, of his will, with full power

to execute its provisions, and excused them from the requirement to give bond as such except as provided by law. William Firey Snyder and Augusta M. Cearfoss qualified, under the will, in Maryland. William Firey Snyder died in 1942, before the institution of this suit, and Augusta. M. Cearfoss qualified in Berkeley County, West Virginia, and she is now acting and performing the duties as surviving executrix of the will.

Under the agreement, the substance of which has already been stated, the plaintiff made repairs to the house located on the property; sold and removed a barn; caused the land to be surveyed; had streets made; and laid out one hundred and fifteen lots upon the portion of the land located on the west side of the highway. The lots were indicated on a plat which was duly recorded. These acts were performed by him sometime prior to the year 1937. He also made sale of ten of these lots and a small piece of land in the northeast corner of the tract. Presumably deeds were made by Snyder for these lots to the purchasers, as nothing to indicate the contrary appears in the evidence. These sales were made between September 16, 1937, and July 11, 1938. Most of these sales were for lots which are located on the highway and in the most valuable sections of the property.

After July 11, 1938, no other sales were made by Pownall, and it appears that he did not, at any time, sell any lots in the portion of the property east of the highway, containing about two acres, and that he did not lay out any lots there until about the time of the death of Snyder in 1941. The plat covering this portion of the property was never recorded. Only two statements of account, one dated August 9, 1937, and the other dated September 23, 1937, were made and transmitted by him to Snyder during his lifetime. In 1943, after the death of Snyder, at the request of the defendant, Pownall, by letter, mailed a statement of the expenses and the receipts, as shown by his records, to her at Hagerstown, Maryland. This statement, and the accompanying letter, were introduced in evidence with her testimony.

Following the death of Snyder, and the qualification of the defendant, in Maryland, as executrix, she had a telephone conversation with Pownall, shortly after June 6, 1941, in which she told him that she did not expect to continue with the contract because it had been discontinued for a number of years, and that she did not expect to have it revived. Sometime later, the exact date not being definitely established, she had a second conversation with Pownall, when she was in Martinsburg, in which she told him that the contract was, and had been, off for a number of years, that he and Snyder knew it back in 1938, that Snyder had no intention of carrying out the contract, and that she did not intend to revive it.

In May, 1944, the plaintiff mailed to the defendant, for execution and acknowledgment by her, as Surviving Executrix and in her own right as residuary legatee of J. O. Snyder, deceased, a deed for a lot in the property covered by the agreement of December 11, 1934, which he asserts he had previously sold to a man named Martin for $500.00, $250.00 of which was paid by the purchaser to the plaintiff and which he now has in his possession. It appears that the defendant had told the plaintiff, when she learned of the transaction from the plaintiff, and before he mailed the deed, that she would not execute it, and that upon receipt of the deed she refused to sign it and returned it to the plaintiff. About a year before this transaction, the plaintiff told the defendant, in a telephone conversation, that he had a sale for the entire tract. She inquired at the time as to his offer, and he replied, in effect, that he did not know what it was. She then asked him to meet her and talk over the matter, but he did not comply with her request and nothing further occurred in connection with it. Pownall testified that before the incident, but sometime after the death of Snyder, he had a conversation with the defendant in which she stated that she had so much litigation of the Snyder estate that she could not make any deeds. This conversation the defendant denied.

After the death of Snyder, and from 1941 to 1944, the plaintiff transacted other matters of business with the defendant relating to the Snyder estate, and she consulted him, and he assisted her in having its assets in Berkeley County appraised and in preparing reports for taxation, which she filed for the estate. During this period the plaintiff made no claim against the defendant under the contract, and when the defendant requested him, by letter dated June 5, 1941, to make up any bill which the estate owed him and bring or mail it to her, he did not respond. The defendant testified, however, that, when she informed the plaintiff that she would not execute the deed which he had prepared for her to make to Martin, he told her that he owned the property and did not care about her refusal.

Though the enterprise created by the contract was not fully completed by the parties before his death, Snyder complied with the requirements imposed upon him by the contract during his lifetime. He had received, prior to his death, a substantial portion of the $6,200.00 which he had paid for the property, and most, if not all, of the expenses had been paid. Pownall has not received any commissions or compensation for the services which he has performed under the contract.

Pownall did not have the contract admitted to record until after the death of Snyder. As above stated, the proceeds of all sales made by the plaintiff were delivered by him to Snyder, and it does not appear that he at any time complained or expressed dissatisfaction because the plaintiff made no sales after 1938, or because he did not sell a larger number of lots or dispose of them more rapidly. The plaintiff avers that the portion of the property which remains unsold has a market value in excess of $10,000.00. The plaintiff, though not having sold, since 1938, any of the property covered by the contract, made numerous sales of other real estate after that time, and the defendant, after qualifying as executrix, made deeds, from time to time, for other real estate owned by the Snyder estate.

The defenses raised by the demurrer and the answer are presented to this Court by numerous assignments of error. They advance, in substance, these contentions: (1) A court of equity is without jurisdiction to entertain this suit because the plaintiff has an adequate remedy at law; (2) the relationship created by the contract in suit is that of principal and agent, not of joint adventurers, between the parties to the contract; (3) the plaintiff, by not complying with the obligations imposed upon him by the contract, is not entitled to specific performance of its provisions; (4) the plaintiff can not sue the defendant in both her representative and her individual capacities; (5) the plaintiff abandoned the contract; and (6) the plaintiff is guilty of laches barring his right to relief.

The first two contentions are closely related and will be considered together.

If the relationship created by the contract was merely that of principal and agent, involving a purely legal demand, and no fraud or other ground for equitable relief exists, there can be no question that the plaintiff has a complete and adequate remedy at law, and, in that situation of the parties, he is not entitled to relief in equity. It is well settled that equity does not have jurisdiction of cases in which the plaintiff has a full, complete and adequate remedy at law, unless some peculiar feature of the case comes within the province of a court of equity. That statement of the principle is supported by such an unbroken line of decisions of this Court, and is so firmly established as the law of this State, that it calls for no citation of authority.

To determine, however, whether this recognized principle of law applies to the facts of this case, it is necessary to ascertain the character of the relationship created by the agreement of December 11, 1934. A study of that instrument indicates clearly that it creates a relationship far more comprehensive than the usual and ordinary relation which exists between a principal and an agent for the sale of real estate.

As a general rule, the agent represents the principal and acts in his behalf with authority to bind him in a transaction with a third party. The contract here, however, goes far beyond the creation of authority in the plaintiff to represent Snyder and to bind him in transactions with a third party. It expressly authorizes the plaintiff, in conjunction with Snyder, the owner, to develop the property, and it places solely in him the right and the duty to prepare the land for sale, and to make sale of the lots into which he was required to subdivide it. It also gives him an interest in the subject matter, from the development of which the profits contemplated by the parties were expected to arise, and an equal share of those profits, after the payment of the expenses of the project and the value of the property contributed by Snyder, as the only compensation for the services which the plaintiff was obligated to render and perform. The contract also invests the plaintiff with the control and the management, as a principal, in that phase of the enterprise which dealt with the sales from which the income of the undertaking was to be derived. In view of these rights and interests, in addition to the usual incidents of the mere relation of principal and agent, the question arises whether the contract in suit created a joint adventure between the parties to it, as contended by the plaintiff.

The courts in which the subject of joint adventure has been considered have not formulated or laid down any exact or comprehensive definition of these terms. It is deemed unnecessary, in the decision of this case, to attempt to define a joint adventure, but it is considered appropriate to enumerate and discuss some of the distinguishing elements or features which are regarded as essential to its creation or existence. As between the parties, a contract, written or verbal, is essential to create the relation of joint adventurers. 30 Am. Jur., Joint Adventures, Section 9. To constitute a joint adventure the parties must combine their property, money, efforts, skill, or knowledge, in some common undertaking of a special or particular nature, but the contributions

of the respective parties need not be equal or of the same character. There must, however, be some contribution by each party of something promotive of the enterprise. 30 Am. Jur., Joint Adventures, Section 10. An agreement, express or implied, for the sharing of profits is generally considered essential to the creation of a joint adventure, and it has been held that, at common law, in order to constitute a joint adventure, there must be an agreement to share in both the profits and the losses. It has also been held, however, that the sharing of losses is not essential, or at least that there need not be a specific agreement to share the losses, and that, if the nature of the undertaking is such that no losses, other than those of time and labor in carrying out the enterprise, are likely to occur, an agreement to divide the profits may suffice to make it a joint adventure, even in the absence of a provision to share the losses. 30 Am. Jur., Joint Adventures, Section 12.

In *Gelwicks* v. *Homan*, 124 W. Va. 572, 20 S. E. 2d 666, this Court held, in Point 1 of the Syllabus:

"A joint adventure is created where two or more persons undertake a special and particular enterprise, involving some activity beyond that of joint ownership, and where there is no intent to enter into an actual partnership."

In that case, the plaintiff sought recovery from certain members of the board of directors of an insolvent bank of their pro rata shares of the losses which resulted to the estate of plaintiff's decedent from an agreement between him and them whereby he was to subscribe and to pay for a specific number of unsold shares of the stock of the bank, and the resulting losses were to be shared by all the parties to the agreement. This Court concluded that the undertaking was a joint adventure and allowed recovery by the plaintiff, although it was evident that no thought of profit from the transaction was entertained by any of the parties to the agreement. In the opinion this Court uses this language:

"Joint adventure is akin to partnership, and one of the distinctions is that, whereas, a partnership relates to a general business of a certain type, joint adventure relates to a single business transaction. *Kaufman* v. *Catzen*, 100 W. Va. 79, 130 S. E. 292; *Horn* v. *Holley*, 167 Va. 234, 188 S. E. 169; *Dexter & Carpenter* v. *Houston*, 20 Fed. 2d 647. When set up, a fiduciary relationship is established among the interested parties, and the same rights and duties are created and imposed as if a technical partnership existed. Independent of any express agreement, the parties are entitled to share in the profits of the enterprise and in the liability for losses. 30 Am. Jur., 693. If one member of the adventure sustains losses, he is entitled to contribution from his fellow-adventurers, and will be required to account to them for any profits he may receive personally. The utmost good faith is required on the part of all concerned. *Berry* v. *Colborn*, 65 W. Va. 493, 64 S. E. 636, 23 L. R. A. (N. S.) 522; *Dexter & Carpenter* v. *Houston*, supra; 30 Am. Jur. 699."

In *Horchler* v. *Van Zandt*, 120 W. Va. 452, 199 S. E. 65, in discussing joint adventure or enterprise, this Court said:

"A joint enterprise or adventure frequently exists in business undertakings. It is less amalgamating than a partnership but partakes of the nature thereof. *Ohio Valley Builders' Supply Co.* v. *Construction Co.*, 108 W. Va. 354, 151 S. E. 1. Such adventure is sometimes called a limited partnership; not limited as to liability, but as to its scope and duration. *Ross* v. *Willett*, 76 Hun 211, 27 N. Y. S. 785. Distinguished from the routine of partnerships and other business associations, single or isolated undertakings usually constitute the background of joint adventures. *Fletcher* v. *Fletcher*, 206 Mich. 153, 172 N. W. 436; *Keiswetter* v. *Rubenstein*, 235 Mich. 36, 209 N. W. 154, 48 A. L. R. 1049."

A joint adventure is to be conducted by the parties to the undertaking, and the failure of any party completely to perform his part does not forfeit his fully acquired interest. Notwithstanding defaults and omissions, each has an interest in such assets as have been preserved or accumulated. *Kaufman* v. *Catzen*, 81 W. Va. 1, 94 S. E.

388. Rights, obligations, and duties of the parties to a joint adventure, are somewhat similar to those existing between partners. *Blue* v. *Blue*, 92 W. Va. 574, 116 S. E. 134.

As a general rule, if no date is fixed by the contract of joint adventure for its termination, the agreement remains in force until its performance is accomplished, or until such accomplishment has become impracticable. Prior to that time, ordinarily, neither party can end it at will, by notice or otherwise. 30 Am. Jur., Joint Adventures, Section 44.

The argument is advanced in the reply brief of the defendant that there were no losses to be paid by Pownall, and that he expressly assumed none. In a joint adventure, however, as stated in the opinion of this Court in *Gelwicks* v. *Homan*, 124 W. Va. 572, 20 S. E. 2d 666: "Independent of any express agreement, the parties are entitled to share in the profits of the enterprise and in the liability for the losses." It does not appear that any loss has occurred. The payments made by Snyder were payments of expenses, not losses. It is evident also that in contributing his time and services Pownall faced, if the enterprise should end in losses instead of profits, the same likelihood of losing their value as did Snyder of losing the value of the land contributed by him and the money which he paid for expenses.

Keeping in mind the foregoing principles, and applying them to the contract here in suit, it is clear that the relationship created by it between the plaintiff and Snyder constitued a joint adventure, and not the mere relationship of principal and agent. It is manifest that the plaintiff does not have an adequate remedy at law to construe and enforce the provisions of the contract, to determine and adjudicate the rights and the interests of the parties, or to obtain the relief which the plaintiff seeks in this suit, and that a court of equity has jurisdiction to hear and determine those matters. A fiduciary or trust relation exists between joint adventurers which

confers jurisdiction upon a court of equity to hear and determine all controversies arising between them. This jurisdiction will be exercised, even though the plaintiff may have an adequate remedy at law to recover profits that have been ascertained or to redress other particular grievances. 33 Corpus Juris, Joint Adventure, Sections 82, 84.

The defendant, however, insists that, as the Circuit Court considered this suit as a suit in which the relief sought is in the nature of specific performance, the failure of the plaintiff to make sales of the lots, into which the portion of the property located west of U. S. Route No. 11 was subdivided, with more rapidity and in greater number than the sales of the ten lots made by him in 1937 and 1938, and during the period of more than six years which elapsed from the date of the contract, on December 11, 1934, to the death of Snyder on February 10, 1941, his delay until 1938 in dividing the portion of the property on the east side of the highway, and his failure to sell any of those lots, amount to such noncompliance with, and failure to perform, the obligations imposed upon him by the contract as operate to defeat and extinguish any right which he might have had to specific performance of the contract.

In support of this contention she points with emphasis to the provision of the contract which requires the plaintiff to proceed with the development of the property with reasonable speed, which development included surveying, plotting, laying of streets and sidewalks, and advertising and selling lots, by auction or otherwise. She asserts that the foregoing conduct of the plaintiff, in selling only ten lots during the period of more than six years that had elapsed between the date of the contract and the death of Snyder, and during the ten year period between the time of the signing of the contract and the institution of this suit in August, 1944, and in negotiating the sale of a single lot to Martin, in May, 1944, ignores and disregards the requirement of reasonable speed, and that additional sales of the remaining lots,

at the same rate of ten lots in ten years, would prolong the operation of the contract for more than a century.

This suit, however, is not a suit for the sole or primary purpose of obtaining specific performance of the contract. The defendant concedes as much in her reply brief, in which she states that it is not a suit for specific performance and that specific performance of the contract is the very thing that the plaintiff does not want. Though the plaintiff seeks enforcement and completion of the contract against the defendant, and to that extent seeks relief in the nature of specific performance, that type of relief is merely incidental to the main purpose of the suit. Other matters and other issues are involved. The plaintiff seeks construction of the contract, determination of the character of the undertaking and the nature of the relationship created by it between the parties, adjudication of their rights, interests and duties, and settlement of their accounts. This suit resembles closely a suit to settle a partnership. The absence from the bill of complaint of allegations showing the right of the plaintiff to a decree of specific performance of the contract does not deprive a court of equity of jurisdiction to entertain the cause or to determine the equitable issues involved.

The defendant maintains that the death of Snyder terminated the rights and the duties of the parties under the contract. This position is not tenable. The death of a co-adventurer does not necessarily terminate the enterprise, *Gelwicks* v. *Homan*, 124 W. Va. 572, 20 S. E. 2d 666, or the liabilities of the parties to be fixed and determined with reference to the conditions then existing. The agreement, however, may expressly provide that on the death of one of the parties the survivor shall complete the enterprise, but even in the absence of such a provision, if capital is embarked in a joint adventure for a prescribed term, and the parties have clearly evinced an intent that it should remain in the business until the expiration of the term, it may not be withdrawn merely because of the death of one of the joint adventurers. In such case, the interest of the deceased co-adventurer or-

dinarily passes to his personal representative as assets of his estate, but if the interest of the deceased co-adventurer consists of real estate, his rights and obligations may pass to his heirs or devisees instead of to his personal representative. 30 Am. Jur., Joint Adventures, Section 46. Though a contract of joint adventure is not personally binding on the heirs of the parties, still where real estate which is the subject of the joint adventure descends to the heirs of the parties, it is subject to the trust imposed for the benefit of all the parties, and the other parties to the adventure can enforce the trust to the extent necessary to secure their share of the profits of the joint adventure. 30 Am. Jur., Joint Adventures, Section 42.

The death of the party to a joint adventure, whose contribution consisted of capital in the form of money or property, in the absence of a provision in the contract to that effect, does not terminate the enterprise, and the heirs or the personal representatives of the deceased party are entitled to recover the share to which he is entitled. 33 Corpus Juris, Joint Adventure, Section 29. The trust relationship, created by the contract, continues after the death of a party and may be enforced against or in favor of those who succeed to his rights and his interests. Unlike Pownall, who was required by the contract to furnish personal services which his knowledge and his experience of many years in real estate transactions qualified him to render in the promotion of the enterprise, Snyder was not obligated to perform any acts beyond his contribution of money and property, other than the execution of the deeds to purchasers of the lots which Pownall was authorized and directed to make. The duty imposed upon Snyder could readily be performed by those to whom his interest should pass, under his will or by operation of law, at his death. The situation might have been different if Pownall, instead of Snyder, had died before the completion of the enterprise, because of the peculiar character of the personal services required of him. 33

Corpus Juris, Joint Adventure, Section 29. That condition, however, does not here exist.

The defendant complains of the action of the plaintiff in bringing this suit against her as surviving executrix and in her own right as residuary legatee of the Snyder estate. She insists that this suit can not properly be maintained against her in both capacities. There is no merit in this assignment. When a suit in equity is brought for an accounting between joint adventurers, all parties having an interest in the adventure, or claim to the property involved in it, including the legatees and the heirs at law of the deceased members, if the title of real estate is involved, should be made parties to the suit. 33 Corpus Juris, Joint Adventure, Section 89. The interests of the deceased co-adventurer ordinarily pass to his personal representatives as assets of the estate; but if the interest of the deceased co-adventurer is in the nature of real estate his rights and interests may pass to his heirs instead of to his personal representatives. 30 Am. Jur., Joint Adventures, Section 46. Without determining the particular rights and interests to which the defendant is entitled, as surviving executrix and in her own right as the residuary legatee, it is evident that she possesses rights and interests in each capacity in the enterprise. The evidence indicates that the Snyder estate, though in process of settlement by the defendant as surviving executrix of the will, has not yet been finally settled. For these reasons it was proper to make the defendant a party to the suit, both as surviving executrix and in her own right as residuary legatee.

The defendant further insists that the delay and the inactivity upon the part of the plaintiff in fully carrying out the undertaking constitute abandonment of the contract by him, and that his failure to institute this suit promptly amounts to laches which operates to deny the plaintiff relief in equity.

Whatever may have been the conduct of the plaintiff relative to the methods pursued or the time consumed

by him in such efforts as he made to complete the enterprise, in whole or in part, during the lifetime of Snyder, it was well known to Snyder. He knew what the plaintiff had done and what he had not undertaken or endeavored to do. In fact, his attitude, with full knowledge of the circumstances, strongly indicates complete acquiescence and approval of the actions of the plaintiff in connection with the project. The only definite indication of abandonment or repudiation of the contract, by any of the parties to it or to this suit, consists of the statements by the defendant to the plaintiff, after the death of Snyder, that she did not expect to revive the contract and that Snyder had no intention of carrying out the contract, and her refusal, in 1944, to execute the deed for the lot which the plaintiff states he had sold to Martin. This conduct of the defendant tends to show repudiation by her, rather than abandonment by the plaintiff, of the contract.

The terms reasonable speed, which the defendant contends are equivalent to a reasonable time within which the plaintiff is required to make sale of all the lots, and which should have been accomplished by the plaintiff before the death of Snyder, do not of necessity limit the time available to the plaintiff for that purpose to that or any other definite period. If the parties had so intended, they could, and they doubtless would, have so provided in the contract. That they did not do so, and that they also modified the term speed by the word reasonable, indicate that they contemplated a longer period and a slower rate of progress in selling the lots than if they had simply provided for speedy action by the plaintiff in that particular. It is reasonably clear that both parties to the contract, at the time it was entered into, realized that the complete accomplishment of their joint undertaking would require a considerable period of time which would likely continue for many years. That they intended the enterprise to remain in effect until all the property was sold is indicated by Paragraph 8 of the contract, which requires semi annual settlements by and between

the parties until all the operations under it, which included the sale of the property, were completed. A sale is not a unilateral transaction. The most active and persistent seller must, of necessity, find a buyer. Sales of lots, where owned in large numbers, are rarely made within a single period of time or according to any definite or uniform schedule. Ordinarily there are spurts and accompanying lulls in any plan or endeavor to effectuate their transfer and disposal.

That the plaintiff made sales of other lots, not embraced in the enterprise, does not of itself establish either noncompliance with, or abandonment of, the contract. It does not appear that these sales were of property similar in character or location to the property embraced in the joint adventure, or that they were made to purchasers who, save for such sales, would have bought any lot or lots in the property covered by the contract. The sale of the lot made to Martin, which the defendant has refused to complete by the execution of a deed, which is not controverted in the evidence, tends to contradict the charge that the plaintiff has abandoned the enterprise and has ceased to comply with his obligations under the contract.

Courts of equity are reluctant to deny to a claimant an acknowledged right unless that right is clearly shown to have been abandoned. Equity is not fond of taking advantage of a forfeiture arising merely from lapse of time. *Nelson* v. *Carrington,* 4 Munf. 332.

Laches may be said to be such neglect or omission to do what a person should do as warrants the presumption that he has abandoned his claim and declines to assert his right, or such delay as works disadvantage to another. *Blake* v. *Blake,* 98 W. Va. 346, 128 S. E. 139. Any excuse for delay that takes hold of the conscience of the chancellor, and makes it inequitable to interpose the defense, is sufficient. *Berry* v. *Wiedman,* 40 W. Va. 36, 20 S. E. 817. It is a well settled general rule in equity that mere lapse of time, unaccompanied by circumstances af-

fording evidence of a presumption that a right has been abandoned, is not considered laches. *Roberts* v. *Crouse,* 89 W. Va. 15, 108 S. E. 421; *West Virginia Power and Transmission Company* v. *Voight,* 91 W. Va. 581, 114 S. E. 138; *Cranmer* v. *McSwords,* 24 W. Va. 594.

Laches implies injury to the person pleading it, brought about by loss of the evidence, the death of some of the parties to the original transaction, changed situations, or the intervention of the rights of other persons. *Roberts* v. *Crouse,* 89 W. Va. 15, 108 S. E. 421; *Cranmer* v. *McSwords,* 24 W. Va. 594. Mere delay or lapse of time alone is not sufficient to bar relief. It must be accompanied by some disadvantage to the opposite party, or by some conduct indicating abandonment of the claim, the reassertion of which will inure to the benefit of the claimant by reason of changed conditions. *Mitchell* v. *Cornell,* 88 W. Va. 194, 106 S. E. 866. The delay, upon the part of the plaintiff, in postponing the institution of this suit until after the death of Snyder, has worked no injury or caused no disadvantage to Snyder, or to the defendant, his successor. It is true that Snyder has died, and that, in many instances, the death of a party results in disadvantage to the person who interposes the defense of laches. But that situation does not exist in this case. The death of Snyder has caused no loss of evidence to the defendant. She was thoroughly familiar with the whole transaction and she kept the record which Snyder possessed concerning it. All the information which Snyder had is known or available to her. His death, instead of depriving the defendant of evidence, actually operated to the disadvantage of the plaintiff, who, as a party in interest, and by statute being incompetent to testify as a witness in regard to any personal transactions between him and Snyder, was deprived of much evidence which, except for the death of Snyder, he would have been able to introduce. To that extent the delay and the death of Snyder resulted in substantial disadvantage to the plaintiff. It is difficult to see how any delay upon the part of the plaintiff resulted in any injury to the defendant. Accordingly, the defense of laches is not available to

her and does not operate as a bar to the suit of the plaintiff.

Upon the case as made by the plaintiff, it would be inequitable to deny him the right to complete the enterprise created by the contract and to have an accounting in accordance with its terms and provisions, or to hold that the defendant is not subject to the obligations imposed by it upon Snyder. There has been partial performance upon the part of the plaintiff and upon the part of Snyder, but the object of the undertaking has not been fully completed by the effort and the contribution which have been made by each party to the contract. It does not satisfactorily appear that Pownall could have disposed of the lots with greater speed or in larger number, or that anything he has done or has not done has resulted in the loss of any prospective sale or of any available purchaser. It does not appear that anyone could have made more sales or concluded them with greater rapidity than the plaintiff has been able to do. If the joint adventure, created by the contract, as contemplated by the parties at the time it was entered into, is carried out, no loss or hardship will result to either party or his successor, and each will obtain the benefits which it undertook to provide. To hold otherwise would deprive the plaintiff of any reward or compensation for the services which he rendered and the time and the effort which he has, in good faith, contributed during a long period of time, and would permit the defendant to abandon or repudiate the contract without just cause or reason and enable her to hold, free and acquit of the rights and the interests of the plaintiff, under the contract, the unsold portion of the property which Snyder contributed to the joint adventure and which she has received as a gift from him, notwithstanding the showing that most of the cost of the property of $6,200.00 was repaid to Snyder in his lifetime, and that this was brought about, in substantial measure, by the efforts of the plaintiff. Even the abandonment of a joint adventure, by one of the participants, and his active opposition to its operation by his co-adventurers, will not for-

feit his interest in the enterprise or deprive him of his right to share in the profits, although he is chargeable, in an accounting, with the consequences of his derelictions and other misconduct. *Kaufman* v. *Catzen*, 81 W. Va. 1, 94 S. E. 388.

In concluding the joint adventure, which the plaintiff must do before he may obtain the relief which he seeks, he is not entitled to have the remaining unsold portion of the property sold under the direction of the court. As a joint adventurer, under the contract, he agreed, and he is obligated, to make such sales, pursuant to its terms, with due and reasonable diligence, with proper regard for the rights and the interests of the defendant and himself, without sacrifice of value, and with due consideration of market conditions and of the attendant circumstances existing at the time such sales are made by him. Neither is the plaintiff entitled to a final settlement or accounting, in this suit, until after such sales have been so concluded, as provided by the contract and as hereinabove directed. Accordingly, the decree of the Circuit Court of Berkeley County, entered June 26, 1945, in so far as it grants the plaintiff the relief prayed for in his bill of complaint, before he makes sale of the residue of the property embraced in the contract, and in accordance with its terms and conditions, and as hereinabove indicated, and in so far as it otherwise directs the sale, in this suit, of the remaining unsold assets of the joint adventure, and orders a settlement of the accounts between the parties prior to such sale and a reference to a commissioner of the Circuit Court for that purpose, is reversed and set aside. In all other respects the judgment of the Circuit Court is affirmed.

The plaintiff, having substantially prevailed in this Court, is awarded the costs of this appeal.

*Reversed in part;*
*affirmed in part;*
*remanded with directions.*