Michael H. **HOLLAND**, Marty D. Hudson, Elliott A. Segal, Thomas O.S. Rand, Carlton R. Sickles, Gail R. Wilensky, and William P. Hobgood, as Trustees of the United Mine Workers of America Combined Benefit Fund, Plaintiffs,

v.

**AMERICAN COAL COMPANY, INC., Defendant.**

Civ. A. No. 1:93–0995.

United States District Court, S.D. West Virginia, at Bluefield.

Nov. 14, 1994.

David W. Allen, Kenneth M. Johnson, and Jerry Mims, UMWA Health & Retirement Funds, Washington, DC, and Gary A. Collias, McIntyre & Collias, Charleston, WV, for plaintiffs.

Alvin E. Gurganus, Princeton, WV, for defendant.

## MEMORANDUM OPINION

FABER, District Judge.

Plaintiffs are the Trustees of the United Mine Workers of America Combined Benefit Fund ("Combined Fund"). Plaintiffs filed the above-styled action in this court on October 20, 1993, pursuant to the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§ 9701, *et seq.* (the "Coal Act"), seeking to recover, on behalf of the Combined Fund, delinquent contributions owed by American Coal Company, Inc. ("American Coal") under section 9704(i)(1)(A) of the Coal Act. On May 6, 1994, plaintiffs filed a motion for summary judgment against American Coal.

Defendant also filed a motion for summary judgment, alleging that since American Coal ceased all business operations on January 1, 1993, the company has no further obligations under the 1988 agreement which it signed, and is not liable for the contributions sought by plaintiffs. Both parties have agreed that this action can be appropriately resolved through summary judgment under Rule 56 of the Federal Rules of Civil Procedure. As both summary judgment motions have been fully briefed by the parties, this action is mature for the court's consideration.

Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett,*

---

477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552. If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict....

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 250–251, 106 S.Ct. at 2511.

American Coal's sole contention is that because the company was no longer in business on February 1, 1993, and plaintiffs were notified of that fact, the United Mine Workers Association Combined Fund Trust Document indicates that plaintiffs are not empowered to collect any delinquent contributions from American Coal. Accordingly, this court must determine whether the fact that American Coal ceased its business operations on January 1, 1993, is relevant to the defendant's obligation to pay to the Combined Fund first year contributions required by the Coal Act.

If the requirements of the Coal Act apply regardless of whether American Coal remained in business on February 1, 1993, plaintiffs are entitled to summary judgment, as there would be no genuine issue of materi-al fact as to whether American Coal is liable for first year contributions to the Combined Fund. If this court concludes that an employer which was no longer in business on February 1, 1993, is not liable under the Coal Act, a question of fact remains as to whether American Coal actually ceased all business operations before February 1, 1993.

Turning to the case at bar, a recitation of the factual and statutory background is required to place the present motions in proper perspective. Prior to the passage of the Coal Act in 1992, health benefits for retired coal miners were provided through two health benefit trusts, the United Mine Workers of America 1950 Benefit Plan ("1950 plan") and the United Mine Workers of America 1974 Benefit Plan ("1974 plan"). As the coal mining industry steadily declined throughout the 1970's and 1980's, and health care costs rose, these retirement plans were adversely affected. In an attempt to strengthen health care benefits, the 1974 plan was restructured in 1978, and again in 1988.

However, as each successive plan expired, employers were leaving the coal mining business and claiming that their obligation to provide health benefits ceased with the expiration of the last National Bituminous Coal Wage Agreement ("NBCWA") that the company had signed. As a result, fewer NBCWA signatories were responsible for greater numbers of retired coal miners, and by the late 1980's, the 1950 and 1974 plans were unable to provide sufficient health care benefits to UMWA retirees. *See Barrick Gold Exploration, Inc. v. Hudson*, 823 F.Supp. 1395, 1399 (S.D.Ohio 1993).

In order to analyze the resulting health care crisis, the Secretary of Labor created the Secretary's Advisory Commission on United Mine Workers of America Retiree Health Benefits (the "Commission"). The Commission concluded that financing health care would require "the imposition of a statutory obligation to contribute on current and past signatories, mechanisms to prevent future dumping of retiree health care obligations,...." *Barrick Gold Exploration*, 823 F.Supp. at 1399, citing *Coal Commission Report: a Report to the Secretary of Labor and the American People*, November, 1990.

In response to the Commission's findings, Congress enacted the Coal Act in 1992. The Coal Act provided for the merger of the 1950 plan and the 1974 plan into the UMWA Combined Benefit Fund, as of February 1, 1993. As stated by the court in *Barrick Gold Exploration,* the Coal Act provides that "[a]ll 1988 agreement operators are required to make contributions to the Combined Fund during the first eight months, commencing February 1, 1993, in an amount sufficient to pay benefits and administrative costs incurred by the Combined Fund during those eight months." *Id.* at 1400, citing 26 U.S.C. § 9704(i)(1)(A).

Based on the historical background of the Coal Act, it is apparent that Congress found that underfunding of the health benefit plans was due, in large part, to the practice of employers withdrawing from the industry and terminating their obligations under the NBCWA, thereby "dumping" their retired employees. *Id.* at 1404. As a result, when Congress passed the Coal Act in 1992, its intent was to require *all* coal operators who had signed the 1988 NBCWA, including those operators no longer in business, to contribute to the Combined Fund during its first year to assure the adequate funding of benefits under the Combined Fund.

Turning to the facts of this case, American Coal was a signatory to the 1988 NBCWA, and, as such, fits the definition of "1988 agreement operator" set forth in section 9701(c)(3) of the Coal Act. Section 9701(c)(3) provides that "[t]he term "1988 agreement operator" means—a signatory operator which was a signatory to the 1988 National Bituminous Coal Wage Agreement...." The Coal Act further provides that "[d]uring the plan year of the Combined Fund beginning February 1, 1993, the 1988 agreement operators shall make contributions to the Combined Fund in amounts necessary to pay benefits and administrative costs of the Combined Fund incurred during such year...." 26 U.S.C. § 9704(i)(1)(A).

It is undisputed that American Coal did not make the contributions to the Combined Fund that are required by section 9704(i)(1)(A) of the Coal Act. It is also apparent that American Coal is a "1988 agreement operator" as defined in the Coal Act. Therefore, plaintiffs seek summary judgment in this case on the ground that there are no disputed facts and the Combined Fund is entitled to judgment as a matter of law.

However, defendant contends that American Coal was no longer in business on February 1, 1993, and, as a result, is not obligated to pay first year contributions as required by section 9704(i)(1)(A) of the Coal Act. Defendant argues that the U.M.W.A. Combined Benefit Fund Trust Document ("Trust Document") controls the contributions from 1988 Agreement Operators, as Article XII(7) of the Trust Document provides that "the trustees shall calculate the amount of contributions due for the 1988 Agreement Operators remaining in business on February 1, 1993, pursuant to section 9704 of the Act to pay the cost of first year operations of the Trust." According to defendant, "there is no section in the 'Document' granting authority to the Trustees to collect contributions from 1988 Agreement Operators for deficits from merged plans who did not remain in business on or after January 31, 1993." (Def.'s Reply to Plf.'s Response at 4.)

Based on the history of the Coal Act articulated above, the court feels that defendant's reliance on the Trust Document is misplaced. The purpose of the Trust Document was to create the United Mine Workers of American Combined Benefit Fund. The Trust Document was created by the trustees of the Combined Fund as an "AGREEMENT [ ] made and entered into by the Board of Trustees of the United Mine Workers of American Combined Benefit Fund...." The Trust Document is not a contract between the Combined Fund and American Coal, nor does it have the force of a federal statute. Additionally, the document states in Article XV that "[t]his instrument shall be construed, regulated and administered under Federal Law."

Thus, contrary to the argument set forth by American Coal, the Trust Document must be interpreted in a manner consistent with 26 U.S.C. § 9704, the controlling statute. Furthermore, Article XII of the Trust Document, which defendant relies on for the proposition that plaintiffs do not have authority to

collect contributions from American Coal, first provides that "[e]ach Assigned Operator, 1988 Agreement Operator, and Related Person *shall* pay to the Trustees the premiums, including contributions, required of it under section 9704 of the IRC." (emphasis supplied.)

Notwithstanding the further provisions of Article XII which specify how the Trustees should collect contributions from 1988 Agreement Operators remaining in business, the language of Article XII(1) clearly indicates that all 1988 Agreement Operators are required to pay the contributions set forth in section 9704 of the Coal Act. Even if Article XII of the Trust Document and section 9704 of the Coal Act were construed by this court as conflicting, the federal statute would control, based on well-known principles of statutory construction and the Trust Document's own language. Therefore, American Coal, as a 1988 Agreement Operator, is liable for the first-year contributions, calculated pursuant to 26 U.S.C. § 9704(i)(1)(E), which are sought by the Trustees.

For this court to hold otherwise would contravene the intent of Congress in enacting the Coal Act. As stated above, the problems leading to the passage of the Coal Act were due, in part, to coal companies which were going out of business and contending that their obligation to provide health benefits ceased with the expiration of the last NBCWA they signed. This is exactly what American Coal is attempting to do, and it is contrary to the language of the Coal Act and the intent behind the Act. As stated by the court in *Barrick Gold Exploration,*

> The Act clearly interferes with the plaintiffs' expectations regarding their obligation to pay for their retirees' health benefits. Although they had promised lifetime health benefits for their retirees, they expected to discharge that obligation by assigning them to the 1974 Plan after they ceased their coal mining operations. However, in light of the problems which had afflicted the UMWA health benefit trusts for two decades, the extensive and long-term government regulation of the coal industry, Congress's involvement in solving the crisis in funding retirement pensions

when it enacted ERISA and the MPPAA and the fact that the Act was contemplated and discussed for two years prior to its passage, plaintiffs should have anticipated that Congress might enact legislation which would require them to shoulder all or part of the cost of fulfilling the promise of lifetime retirement health benefits for UMWA workers.

823 F.Supp. at 1409. Similarly, even though its contractual obligation under the 1988 NBCWA had expired, American Coal can be held responsible for health care benefits for retired miners pursuant to the Coal Act.

The existence of the Trust Document does not negate the mandate set forth in section 9704 of the Coal Act that all 1988 Agreement Operators are responsible for first-year contributions to the Combined Fund. Whether American Coal was or was not in business on February 1, 1993, is not relevant to the court's determination of this action. Accordingly, defendant American Coal, which is a 1988 Agreement Operator under the Act, is obligated to pay the delinquent contributions sought by the trustees of the Combined Fund.

As it is undisputed that American Coal has not paid the amount due to the Combined Fund, as calculated and described in Plaintiff's Motion for Summary Judgment, Exhibit A, there is no genuine issue of material fact remaining in this action. For the reasons herein stated, the court will, in a separate judgment order on this date, grant summary judgment in favor of the plaintiffs and deny the motion for summary judgment made by defendant.