Michael H. HOLLAND, Marty D. Hudson, A. Frank Dunham and Elliot A. Segal, as Trustees of the United Mine Workers of America 1992 Benefit Plan, Plaintiffs,

v.

HIGH POWER ENERGY, Pratt Mining Co., and Geupel Construction Co., Inc., Defendants.

No. Civ.A. 2:97–1092.

United States District Court,
S.D. West Virginia
at Charleston.

April 14, 2000.

Larry D. Newsome, Barbara E. Locklin, David W. Allen, Jennifer Ruiz, UMWA Health & Retirement Funds, Office of the General Counsel, Washington, DC, Gary A. Collias, McIntyre & Collias, Charleston, WV, for plaintiffs.

Charles L. Woody, Paula Durst Gillis, Kevin L. Carr, Spilman, Thomas & Battle, Charleston, WV, for defendants.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court on plaintiffs' motion for summary judgment. Plaintiffs, the Trustees of the United Mine Workers of America 1992 Benefit Plan (the "1992 Plan"), seek injunctive relief prohibiting defendants from failing to provide health care benefits to eligible retirees (and their dependents) of defendant, High Power Energy ("High Power"). Plaintiffs also seek to recover from defendants all amounts expended by the 1992 Plan in providing health care benefits to High Power's eligible retirees and dependents from October 6, 1997, the date on which High Power terminated its health care plan, to the date of entry of judgment, together with attorney's fees, interest and costs, all allegedly owed by defendants to the 1992 Plan under the Coal Industry Retiree Health Benefit Act of 1992 (the "Coal Act"), Pub.L. No. 102–486, 106 Stat. 2776, 3036–3056, *codified at* 26 U.S.C.A. §§ 9701–9722.

On December 23, 1998, the Trustees filed involuntary Chapter 11 bankruptcy petitions against Geupel and High Power in the United States Bankruptcy Court for the Southern District of Ohio. Pursuant to the automatic stay provision of the Bankruptcy Code, 11 U.S.C.A. § 362, all claims of the Trustees against Geupel and High Power in this action have been stayed

pending resolution of the underlying Chapter 11 cases. (*See* Notice of Bankruptcy Stay filed December 29, 1998). On April 12, 1999, Pratt filed a motion to stay all proceedings against it pending resolution of the bankruptcy cases of Geupel and High Power. By memorandum order entered on April 13, 2000, the court denied Pratt's motion and ordered that this action proceed with respect to Pratt. The only claims presented before the court then are those claims asserted by the Trustees against Pratt.

## I. *Introduction*

In October, 1992, in response to problems created by growing deficits in United Mine Workers of America ("UMWA") negotiated health care benefit plans, Congress passed the Coal Act to "remedy problems with the provision and funding of health care benefits ... to retirees in the coal industry...." and to "provide for the continuation of a privately financed self-sufficient program for the delivery of health care benefits...." Pub.L. No. 102–486, §§ 19142(b)(1), (b)(3). Among other things, the Coal Act created two new plans, the Combined Benefit Fund and the 1992 Plan, both of which provide benefits to coal industry retirees meeting certain qualifications and their dependents. Relevant to this action is the 1992 Plan which is required to provide benefits to any individual who meets the definition of an "eligible beneficiary."[1]

Benefits under the 1992 Plan are funded primarily by premiums charged to the last coal industry employer, referred to under the Coal Act as the last signatory operator, of each eligible retiree who was employed under a collective bargaining agreement with the UMWA. 26 U.S.C.A. § 9712(d). The liability to pay premiums is shared, jointly and severally, by all "related persons" to the last signatory operator. 26 U.S.C.A. § 9712(d)(4).

The Coal Act also requires any last signatory operator who maintained a retiree health care plan as of February 1, 1993, pursuant to a National Bituminous Coal Wage Agreement ("NBCWA"), to continue to maintain that plan so long as the last signatory operator, or any related person, remains in business. 26 U.S.C.A. § 9711(a). A last signatory operator or related person is considered to be in business "if such person conducts or derives revenue from any business activity, whether or not in the coal industry." 26 U.S.C.A. § 9701(c)(7). This obligation, like the one to pay premiums to the 1992 Plan, is joint and several among the last signatory operator and its related persons. 26 U.S.C.A. § 9711(c).

## II. *Background*

It is undisputed by the parties in this case that High Power was the last coal industry employer of the twelve beneficiaries in this case. (Affidavit of Kyu W. Lee ¶ 7; *see also* Memorandum of Law in Support of Defendants' Motion in Opposition to Plaintiffs' Motion for Summary Judgment at p. 5). High Power is a joint venture formed on December 5, 1984, by Pratt Mining Company ("Pratt") and Geupel Construction Company, Inc. ("Geupel"), for the purpose of performing and

---

1. Section 9712(b)(2) defines an "eligible beneficiary" as an individual who:
   (A) but for the enactment of [the Coal Act] would be eligible to receive benefits from the [1950 or 1974 Plans], based upon age and service earned as of February 1, 1993; or
   (B) with respect to whom coverage is required to be provided under section 9711 [directly by an individual employer], but who does not receive such coverage from the applicable last signatory operator or any related person,

and any individual who is eligible for benefits by reason of a relationship to an individual described in subparagraph (A) or (B).
26 U.S.C.A. § 9712(b)(2). Excluded from coverage under the 1992 Plan are individuals who retire after September 30, 1994, and their dependents, and anyone receiving benefits from the Combined Benefit Fund. *Id.* at § 9712(b)(1), (b)(2).

completing a contract with Bethlehem Mines Corporation for the mining of certain coal reserves in Nicholas County, West Virginia. (Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, Exh. C, Joint Venture Agreement). In particular, the Joint Venture Agreement executed by Pratt and Geupel provides that:

> WHEREAS, the Parties hereto have submitted a joint bid which was accepted by [Bethlehem Mines Corporation] and have agreed to associate themselves as joint venturers for the purpose of executing the resulting Contract(s) (hereinafter "Mining Contract"), all on the terms and conditions hereinafter set forth.
>
> NOW THEREFORE, said Parties hereto hereby constitute themselves as Joint Venturers for the purpose of performing and completing the Mining Contract. . . .
>
> I. *Title.* The Joint Venture shall operate under the name of "High Power Energy."
>
> II. *Entity.* The entity hereby created is a Joint Venture, an unincorporated association, to carry out the specific purpose herein described and no other.

(*Id.*).

At the time of its formation, Geupel held a 75% ownership interest in High Power, while Pratt owned the remaining 25% interest in the joint venture. (*Id.* at Section V.(b); Charles Wooster Depo. at 20). High Power, as the operating entity charged with completing the mine contract, was a signatory to the 1984, 1988 and 1993 NBCWAs. (Complaint ¶ 11; Answer ¶ 11; *see also* Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, Exh. D). High Power ceased operations some time prior to September 4, 1997. (Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, Exh. F, Letter of Charles Wooster dated September 4, 1997). Pursuant to the 1993 NBCWA, High Power continued to provide health care benefits to its retirees and their dependents until October 6, 1997. (Charles Wooster Depo. at 57–58; *see also* Plaintiffs' Motion for Summary Judgment, Exh. F, Letter of Charles Wooster dated October 1, 1997). Since that date, the 1992 Plan has been providing health care benefits to High Power's retirees and their dependents.

### III. *Discussion*

The Trustees argue that Pratt is a related person to High Power within the meaning of § 9701(c)(2)(A) of the Coal Act and is therefore responsible for providing health care benefits to eligible retirees of High Power and their dependents. As noted previously, § 9711(a) of the Coal Act obligates:

> The last signatory operator of any individual who, as of February 1, 1993, is receiving retiree health benefits from an individual employer plan maintained pursuant to a 1978 or subsequent coal wage agreement shall continue to provide health benefits coverage to such individual and the individual's eligible beneficiaries which is substantially the same as . . . the coverage provided by such plan as of January 1, 1992. Such coverage shall continue to be provided for as long as the last signatory operator (and any related person) remains in business.

26 U.S.C.A. § 9711(a).

The definition of a related person is found at § 9701(c)(2)(A) which provides that:

> (2) Related persons.—
>
> (A) In general.—A person shall be considered to be a related person to a signatory operator if that person is—
>
> (i) a member of the controlled group of corporations (within the meaning of section 52(a)) which includes each signatory operator;
>
> (ii) a trade or business which is under common control (as determined under section 52(b)) with such signatory operator; or

(iii) any other person who is identified as having a partnership interest or joint venture with a signatory operator in a business within the coal industry, but only if such business employed eligible beneficiaries, except that this clause shall not apply to a person whose only interest is as a limited partner.

26 U.S.C.A. § 9701(c)(2)(A)(i)–(iii).

Pratt argues that it is not a related person to High Power, the signatory operator, within the meaning of § 9701(c)(2)(A)(iii) inasmuch as Pratt did not form a joint venture with High Power, but rather formed High Power as a joint venture with Geupel. Pratt urges the court to give effect to its view of the plain meaning of § 9701(c)(2)(A)(iii) and find that Pratt is not a related person and is therefore not liable for providing health care benefits to High Power's retirees and their dependents under § 9711(a) of the Coal Act.

The historical background of the Coal Act appears to be particularly helpful in resolving this issue. As noted previously, the 1992 Plan was created by the Coal Act in an attempt to transform the benefit structure for retired employees of coal companies. The history of the Coal Act makes clear that the purpose of Congress in enacting this legislation was to insure adequate funding of benefit plans by requiring signatories of past benefit plans to contribute to the new plans created by the Coal Act.[2] To that end, Congress found it necessary "to identify persons most responsible for plan liabilities in order to stabilize plan funding and allow for the provision of health care benefits to ... retirees." Pub.L. No. 102–486, § 19142(a)(2). As aptly explained by the court in *Holland v. American Coal Co., Inc.*, 868 F.Supp. 173 (S.D.W.Va.1994) (Faber, J.):

Prior to the passage of the Coal Act in 1992, health benefits for retired coal miners were provided through two health benefit trusts, the United Mine Workers of America 1950 Benefit Plan ("1950 plan") and the United Mine Workers of America 1974 Benefit Plan ("1974 plan"). As the coal mining industry steadily declined throughout the 1970's and 1980's, and health care costs rose, these retirement plans were adversely affected. In an attempt to strengthen health care benefits, the 1974 plan was restructured in 1978, and again in 1988.

However, as each successive plan expired, employers were leaving the coal mining business and claiming that their obligation to provide health benefits ceased with the expiration of the last National Bituminous Coal Wage Agreement ("NBCWA") that the company had signed. As a result, fewer NBCWA signatories were responsible for greater numbers of retired coal miners, and by the late 1980's, the 1950 and 1974 plans were unable to provide sufficient health care benefits to UMWA retirees.

\* \* \* \* \* \*

Based on the historical background of the Coal Act, it is apparent that Congress found that underfunding of health benefit plans was due, in large part, to the practice of employers withdrawing from the industry and terminating their obligations under the NBCWA, thereby "dumping" their retired employees.

*American Coal*, 868 F.Supp. at 174–75 (citations omitted).

Turning to the language of the statute at issue here, § 9701(c)(2)(A)(iii) states that a related person includes a "person who is identified as having a partnership interest or joint venture with a signatory operator...." 26 U.S.C.A. § 9701(c)(2)(A)(iii). Pratt argues that a literal reading of this section compels the court to find that Pratt

---

2. For a more detailed discussion of the history and purpose of the Coal Act, *see Carbon Fuel Co. v. USX Corp.*, 891 F.Supp. 1186

(S.D.W.Va.1995) and *Barrick Gold Exploration, Inc. v. Hudson*, 823 F.Supp. 1395 (S.D.Ohio 1993).

is not a related person to High Power since the joint venture Pratt formed to complete the mining contract with Bethlehem Mines Corporation was with Geupel and not with High Power. The court agrees that the statute could be read in that manner. Such a reading is, however, too narrow and restrictive, particularly in view of the remedial purposes of the statute.

As noted above, a related person includes a person who has a partnership interest or joint venture with a signatory operator. Section 9701(c)(2)(A) is silent as to the definitions of "partnership interest" and "joint venture." The court is guided, however, by the definition of "partnership" found in the Internal Revenue Code, 26 U.S.C.A. § 1 *et seq.* It is noted that both (i) and (ii) of § 9701(c)(2)(A)'s definition of related persons reference the Internal Revenue Code.[3]

The Internal Revenue Code defines a "partnership" as "a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on...." 26 U.S.C.A. § 7701(a)(2). A "partner" is defined to include "a member in such a syndicate, group, pool, joint venture, or organization." *Id.* Thus, under the Internal Revenue Code, a partnership includes a joint venture, and a partner includes one who is a member in a joint venture. Accordingly, a member in a joint venture is considered under the Internal Revenue Code to be the equivalent of a partner in a partnership and is governed by the same legal principles as is a general partner.

A similar result is derived under the joint venture and partnership law of West Virginia which, pursuant to the terms of the Joint Venture Agreement between Pratt and Geupel, applies in this case.[4] Under West Virginia law, a joint venture is defined as "an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge." *Price v. Halstead,* 177 W.Va. 592, 355 S.E.2d 380, 384 (1987); *Nesbitt v. Flaccus,* 149 W.Va. 65, 138 S.E.2d 859, 865 (1964). A joint venture is "similar to a partnership, the principal distinction being that a partnership relates to a general business of a certain type while a joint venture relates to single business transaction." *Nesbitt,* 138 S.E.2d at 865. Stated differently, a joint venture is "a single, isolated business pursuit which ... may be likened to a partnership...." *Price,* 355 S.E.2d at 384. A joint venture " 'is sometimes called a limited partnership;. not limited as to liability, but as to its scope and duration.' " *Id. (quoting Horchler v. Van Zandt,* 120 W.Va. 452, 199 S.E. 65, 67 (1938)). When a joint venture is created, "a fiduciary relationship is established among the interested parties, and the same rights and duties are created and imposed as if a ... partnership existed." *Pownall v. Cearfoss,* 129 W.Va. 487, 40 S.E.2d 886, 894 (1946); *Gelwicks v. Homan,* 124 W.Va. 572, 20 S.E.2d 666, 669 (1942). Like partners, joint venturers are "entitled to share in the profits of the enterprise and in the liability for losses." *Pownall,* 40 S.E.2d at 894.

It is clear that in West Virginia a joint venture is considered to be essentially the equivalent of a general partnership and a joint venturer's liability for the obli-

---

**3.** A related person under § 9701(c)(2)(A)(i) is a member of a "controlled group of corporations," as defined in § 52(a) of the Internal Revenue Code, which includes the last signatory operator. A related person under § 9701(c)(2)(A)(ii) is a trade or business under "common control," as defined in § 52(b) of the Internal Revenue Code, with the last signatory operator.

**4.** The Joint Venture Agreement provides that "[i]t is understood and agreed that each and every provision of this Agreement shall be interpreted in accordance with the laws of the State of West Virginia." (Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, Exh. C, Joint Venture Agreement, Section XVII).

gations of the joint venture is to be determined in accordance with partnership principles. Under West Virginia partnership law, general partners are jointly and severally liable for partnership obligations. *Roberts v. Toney,* 100 W.Va. 688, 131 S.E. 552, 553 (1926); *Weimer v. Rector,* 43 W.Va. 735, 28 S.E. 716, 717 (1897); *Lee v. Hassett,* 41 W.Va. 368, 23 S.E. 559, 560 (1895). This rule has been codified in the West Virginia Uniform Partnership Act, West Virginia Code § 47B-1-1 *et seq.,* which provides, in pertinent part, that "all partners are liable jointly and severally for all obligations of the partnership . . . ." W.Va.Code § 47B-3-6(a) (1999).

■ It is undisputed that Pratt holds a 25% interest in the High Power joint venture. The court concludes that Pratt, as a member of the High Power joint venture, has the equivalent of a 25% general partnership interest in and "with" the joint venture or partnership of High Power, the last signatory operator, and is a related person, with joint and several liability, as defined under § 9701(c)(2)(A)(iii) of the Coal Act. Independently of the related person provision of the Coal Act, Pratt as a general partner is also jointly and severally liable under general partnership principles for all obligations of High Power, including those incurred under the Coal Act.

Pratt is thus jointly and severally liable under both § 9711(c) and general partnership principles for maintaining a health care plan for High Power's eligible retirees and their dependents pursuant to § 9711(a) for so long as Pratt remains in business within the meaning of § 9701(c)(7).

The Trustees also seek reimbursement of an unspecified amount expended by the 1992 Plan for providing health care benefits to twelve beneficiaries of High Power from October 6, 1997, to the date of entry of judgment, plus attorney's fees, interest and costs. In their motion for summary judgment, the Trustees request that the court make a determination as to the amount of Pratt's liability and defer entry of judgment to enable the Trustees to submit an affidavit on that issue. Pratt notes that additional discovery is needed with respect to whether the twelve beneficiaries for which reimbursement is sought are eligible beneficiaries within the meaning of the 1992 Plan. It appears that genuine issues of material fact as to the number of eligible beneficiaries and the amount sought remain for resolution.

### IV. *Conclusion*

For the reasons stated, it is ORDERED that plaintiffs' motion for summary judgment be, and it hereby is, granted except that the motion is denied as to the identity of the eligible beneficiaries and the amount for which Pratt is liable. The schedule for completion of discovery and resolution of all remaining matters shall be established by separate order.

The Clerk is directed to forward copies of this order to all counsel of record.